NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MEGAN M., *Appellant*,

*v.*

MATTHEW M., M.M., M.M., *Appellees*.

No. 1 CA-JV 18-0105
FILED 9-4-2018

Appeal from the Superior Court in Maricopa County
No. JS518322
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Czop Law Firm PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Rubin & Ansel PLLC, Scottsdale
By Yvette D. Ansel
*Counsel for Appellee*

Gutierrez Law PLC, Phoenix
By Gina E. Gutierrez
*Guardian Ad Litem for Children*

---

**MEMORANDUM DECISION**

---

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Maria Elena Cruz joined.

---

**T H U M M A**, Chief Judge:

**¶1**        Megan M. (Mother) appeals from the superior court's order terminating her parental rights to her biological children. Because Mother has shown no error, the order is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        Mother and Matthew M. (Father) are the natural parents of two boys, M.M., born in 2007, and M.M., born in 2011. During the parents' six-year marriage, Mother abused alcohol and marijuana. In February 2013, Father filed for dissolution. The court entered temporary orders allowing Mother unsupervised parenting time. At the end of Mother's first visit, Father found her inebriated and unconscious while the younger boy struggled to stay afloat in a swimming pool. Father pulled him to safety and called the police. When driving away, Mother was arrested.

**¶3**        In October 2013, Mother pled guilty to driving under the influence of alcohol and child endangerment and was placed on probation. The terms of Mother's probation required her to submit to substance abuse testing and treatment and to have no contact with the children. Despite that restriction, Father supervised some visits for her until October 2014. That month, Mother was charged with violating her probation by failing to regularly submit to substance abuse testing and treatment and for, as Mother testified at trial, submitting "[a] dirty drug test."

**¶4**        In February 2015, Mother began a six-month substance abuse treatment program that she successfully completed in August 2015. Two months later, she completed probation and the no-contact order was lifted.

---

[1] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

¶5        The court in the family matter then appointed a therapeutic interventionist to help the parents co-parent the children and to supervise any future visits with Mother.[2] The court also required Mother to submit to drug and alcohol testing at TASC. Between November 2015 and October 2016, Mother tested negative at TASC at times, but she also missed numerous tests or submitted diluted samples. Mother stopped testing at TASC after October 2016. Because Mother did not comply with the court's TASC testing requirement, she never established parenting time with the children and, by the time of trial, had not seen them for three years.

¶6        In February 2017, Father filed a petition to terminate Mother's parental rights on the grounds of abandonment, neglect and chronic substance abuse. *See* Ariz. Rev. Stat. (A.R.S.) §§ 8-533(B)(1)-(3) (2018).[3] In March 2017, Mother submitted to a hair follicle test for ethyl glucuronide (an alcohol metabolite) and four urinalysis drug tests through her own providers. Those tests were negative, but one of them noted low creatinine levels, indicating possible dilution. She submitted one more negative drug test in May and sent the children some cards, emails, and gifts.

¶7        After a contested termination adjudication in January 2018, the court terminated Mother's parental rights on the grounds alleged, also finding that termination was in the best interests of the children. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A) and 12-120.21(A)(1) and Ariz. R.P. Juv. Ct. 103-104.

**DISCUSSION**

¶8        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence at least one statutory ground articulated in A.R.S. § 8–533(B) and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of

---

[2] Mother progressed with two different therapeutic interventionists. However, as Mother advanced towards her first session with the children, the service stopped when she submitted a diluted sample for drug testing.

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

¶9 Mother argues insufficient evidence supports the chronic substance abuse finding because she submitted several negative drug and alcohol tests after submitting to substance abuse treatment. By statute, a court may terminate parental rights if it finds by clear and convincing evidence "[t]hat the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). "Chronic" drug use need not be constant, but must be long-lasting. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377 ¶ 16 (App. 2010). Periods of temporary abstinence from drugs are insufficient to outweigh a parent's significant history of abuse. *Id.* at 379 ¶ 29. Further, a child's interest in permanency prevails over a parent's uncertain battle with addiction. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287 ¶ 17 (App. 2016).

¶10 Mother's argument that she tested negative at times after completing treatment overlooks that she also regularly missed testing or submitted diluted tests, creating a reasonable inference that she had not resolved her substance abuse issues. In addition, Father testified that during the parents' six-year marriage, Mother abused alcohol and marijuana, even while parenting the children. Father noted that after the younger son's birth, Mother's substance abuse escalated, testifying Mother's "drinking became extreme. [He] would find her passed out in the garage[,] outside, different places in the house. [He would] find bottles and beer cans all over the house." When asked how often Mother used marijuana, Father testified that it was "all day long, from wake to sleep" and that she was spending "hundreds [of dollars] a week" buying it. According to Father, Mother's "constant abuse of alcohol and drugs" created an unsafe environment for the children.

¶11 Mother seeks to discount this testimony, arguing that it was only Father's "belief[]" that she was abusing substances and therefore insufficient to establish a chronic history. However, Father testified to his personal observations while living with Mother for years, and the superior court at trial (not this court on appeal) was in the best position to weigh this evidence and assess credibility. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3 ¶ 9 (2016). Moreover, although Mother disputed the extent of her substance

abuse during the marriage, she admitted that marijuana was her drug of choice and that she would smoke it "pretty regularly." She also admitted that she had been drinking alcohol since high school and that her consumption became a problem.

¶12 Reasonable evidence also supports the court's finding that Mother's chronic use of drugs or alcohol rendered her unable to safely parent the children. During Mother's first unsupervised visit with the children, she drank heavily and fell unconscious while they were in or near the swimming pool. Father was unable to reach Mother by phone or get her to answer the door. When he finally reached the backyard, he saw the younger boy (then two-and-a-half years old) "floating in the pool. His floaties were up to his wrist. He was blue." After retrieving him from the pool, Father shook Mother for "about a minute" before "she came to and was just reeking of alcohol." Mother was later convicted of child endangerment and driving under the influence of alcohol.

¶13 This incident occurred four years before the trial in this case, but even afterwards, Mother battled with addiction. She failed to submit to regular substance abuse testing and treatment for probation and admitted that she submitted "[a] dirty drug test" in October 2014. Father testified that around the same time, he observed her "drunk and high." It was not until February 2015 — after an ultimatum from the court — that Mother entered a substance abuse treatment facility. There, her initial drug tests were positive for ketamine, bath salts, marijuana and spice.

¶14 To her credit, Mother had no more positive drug or alcohol tests at that facility after April 2015, and she successfully completed the program. She also successfully completed probation and progressed towards supervised visits with the children. The final step Mother needed to take was to successfully provide four consecutive negative drug tests (and weekly alcohol testing thereafter) through TASC. In ordering this requirement, the court explained to Mother that it would treat any missed or diluted tests as testing positive for prohibited substances.

¶15 In November 2015, however, Mother missed a test and then, the next week, submitted a diluted sample. As a result, the court suspended Mother's parenting time until she established the requisite sobriety. In March 2016 (before Mother established any parenting time), she again missed a test and, a week later, submitted a diluted sample. Consequently, in April 2016, the court suspended Mother's therapeutic intervention service. It allowed her to reinstate the service only if she provided two consecutive negative drug tests.

¶16 In June 2016, Mother submitted another diluted sample, and her therapeutic intervention service automatically halted. Between July and October 2016, Mother submitted two more diluted samples and eventually stopped testing with TASC.[4] Because she did not establish sobriety in the family court case, she never progressed to supervised visits, let alone parenting the children safely, independently and free from impairing substances.

¶17 On this record, the superior court could reasonably conclude that Mother's substance abuse would continue for a prolonged, indeterminate period. She abused substances for years until she engaged in a treatment program. In the years after that program, she intermittently failed to test or submitted diluted samples, even though her visitation and parental rights were dependent on sobriety and the family court considered diluted or missed tests positive results. Mother has not shown that the superior court erred in terminating her parental rights based on the chronic substance abuse ground. [5]

¶18 Mother next challenges the court's best interests finding, arguing that "no [detriment] was established in the record" and that the children's adoption by Father's wife (Wife) was "too remote" to constitute a benefit. For best interests, Father was required to prove, by a preponderance of the evidence, how the children would benefit from termination or be harmed by the continuation of the parent-child relationship. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). This court reviews such a decision for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004).

¶19 Mother argues that she made some progress with the therapeutic interventionists. Even so, her uncertain struggle with addiction spanned eleven years by the time of the severance trial. She urges that "[t]here is no reason why [Father's] concerns about Mother could not still

_____

[4] Mother's submission to private drug testing between December 2015 and March 2016 does not change this analysis. The court ordered Mother to test through TASC. Moreover, although she submitted some negative tests to the private facility, she also failed to test during significant periods, including in October and November 2015 and between April 2016 and February 2017.

[5] Given this conclusion, the court need not address Mother's arguments addressing abandonment and neglect. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002).

be heard and considered by the family court." However, Mother had opportunities to assert her parental rights through that forum. Yet, in the two years after the no-contact order was lifted, she was unable to demonstrate enduring sobriety or establish parenting time with the children. Nor does Mother show how pending family court proceedings preclude a potential severance in juvenile court.

¶20 The record also shows that the benefits of severance were not "too remote." The children had been living with Father and Wife for three-and-a-half years and they were meeting the children's needs. The children were doing "exceptionally well in school" and played sports. Father and Wife testified that the children get along very well with Wife, she loved and supported them and they voluntarily called her "mom." Wife wished to adopt them and testified that she would do so "[b]ecause I love them like they're my own. And I want to provide a stable life for them." *See Demetrius L.*, 239 Ariz. at 4 ¶ 12 ("When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests."). Accordingly, Mother has not shown the court erred in finding that severance was in the children's best interests.

## CONCLUSION

¶21 Because Mother has shown no error, the superior court's order terminating her parental rights to the children is affirmed.

